UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN THOMAS DWAYNE BUNN,

                  Plaintiff,

    -against-

CAROLYN W. COLVIN, Commissioner of Social
Security,

                  Defendant.

------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**11-CIV-6150 (NGG)**

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 0 7 2013 ★

BROOKLYN OFFICE

      Plaintiff John Thomas Dwayne Bunn brings this action, pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the Social Security Administration's ("SSA") decision finding that he

is not disabled and therefore not entitled to supplemental security income ("SSI"). Bunn argues

the SSA made the following errors in denying his application for benefits: that it (1) failed to

properly evaluate the medical evidence by improperly evaluating the opinion of Bunn's treating

physician and Bunn's residual functional capacity; (2) erred by relying solely upon the Medical-

Vocational Guidelines in determining Bunn's disability status; and (3) failed to properly evaluate

Bunn's credibility. The Commissioner of Social Security has filed a motion, and Bunn has filed

a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

For the reasons set forth below, the Commissioner's motion is DENIED, Bunn's motion is

GRANTED, and this case is REMANDED to the SSA for further proceedings.

## I.    BACKGROUND

      Bunn was born on December 19, 1976. (Administrative Record (Dkt. 13) ("Rec.") at 61.)

Bunn was incarcerated in 1991, at the age of fourteen, for aiding and abetting murder. (Id. at 35,

134, 137.) He received his GED while incarcerated. (Id. at 49.) Bunn was released in 2006 but

re-incarcerated from 2008 to April 2009 for a parole violation. (Id. at 24.) He is currently on "lifetime parole." (Id. at 36-37.) Other than working as a construction laborer for a short period in February 2007, he has no relevant work experience. (Id. at 129.) Bunn has applied for jobs at "Home Depot," "Wal-Mart," and "Key Food" but has not received any offers. (Id. at 52-53.)

On May 15, 2009, Bunn filed an application for SSI benefits, claiming that he had been disabled since April 21, 2009, due to "Anxiety, Panic Attacks, [and] Mental Illness." (Id. at 124, 128.) In the application, Bunn alleged that his impairments prevent him from "function[ing] around a crowd" as crowds make him feel uncomfortable. (Id. at 128.) Bunn further stated that he stopped working due to difficulties "performing [his] job" and "dealing with coworkers," and because he "couldn't deal with the pressures being put on" him. (Id.) The SSA denied his application for benefits on October 22, 2009. (Id. at 61.)

Bunn requested a hearing on his application before an Administrative Law Judge ("ALJ"); ALJ Jerome Hornblass held a hearing on the application on June 15, 2011. (See id. at 33-59.) Bunn testified at the hearing. (See id. at 34-58.) On July 15, 2011, the ALJ issued a written decision concluding that Bunn was not disabled within the meaning of the Social Security Act. (Id. at 20-27.) Bunn's request that the SSA Appeals Council review the ALJ's unfavorable decision was denied by the Appeals Council on October 20, 2011 (id. at 1-3, 14), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On December 19, 2011, Bunn, represented by counsel, filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the SSA's decision that he was not disabled and therefore not entitled to SSI. (Compl. (Dkt. 1).) Bunn and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

(Def. Mem. (Dkt. 9); Pl. Mem. (Dkt. 11).)  The Commissioner filed a reply in further support of

the motion for judgment on July, 23, 2012.  (Def. Reply Mem. (Dkt. 12).)

## II.     LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but

early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment

on the pleadings is appropriate where material facts are undisputed and where a judgment on the

merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor

Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  The standard for reviewing a Rule 12(c) motion

is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a

claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010).  To survive

either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (internal

quotation marks omitted).  A court is required to "accept as true all allegations in the complaint

and draw all reasonable inferences in favor of the non-moving party." Gorman v. Consol.

Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007).  In addition to the pleadings, the court may

consider "statements or documents incorporated into the complaint by reference . . . and

documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B.     Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited."

Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19,

2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the

record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  "A district court may

set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by 'substantial evidence' or if the decision is based on legal error."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).  "Substantial

evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127

(2d Cir. 2008) (internal quotation marks omitted).  In sum, the ALJ's decision is binding on this

court only if (1) the ALJ has applied the correct legal standard and (2) the ALJ's findings are

supported by evidence that a reasonable mind would accept as adequate.

    **C.**        **Determination of Disability**

    "To receive federal disability benefits, an applicant must be 'disabled' within the

meaning of the Social Security Act."  Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423.  A

claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

impairment must be of "such severity that [claimant] is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

    The SSA has promulgated a five-step procedure for determining whether a claimant is

"disabled" under the Act.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  In Dixon v. Shalala,

54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is
> engaged in "substantial gainful activity."  If so, benefits are denied.

If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.

If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in . . . the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.

If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.

If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted)

Ultimately, the "burden is on the claimant to prove that he is disabled." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner to "show that there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059,

5

at *10 (citing Carroll, 705 F.2d at 642). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id. (citing Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Shaw, 221 F.3d at 134).

## III.   DISCUSSION

Bunn argues that the ALJ erred in concluding that he was not disabled under the Social Security Act. (Compl. ¶ 13.) He does not dispute the ALJ's findings at the first three steps of the required five-step analysis, that Bunn: (1) had "not engaged in substantial gainful activity since May 15, 2009"; (2) suffered from "the following severe impairments: affective disorders, anxiety, asthma, headaches, and hyperlipidemia"; and (3) did not suffer from any of the impairments listed in the regulations that carry a presumption of disability and entitlement to benefits. (Rec. at 22.)

At step four of the disability determination, the ALJ found that Bunn "has the residual functional capacity to perform light work . . . except that [he] is limited to unskilled work due to his mental impairments" and "should avoid excessive smoke, dust, and other known respiratory irritants." (Id. at 23.) The ALJ further concluded at step four that Bunn's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual capacity assessment." (Id. at 24.)

Based on the residual functional capacity assessment, the ALJ found at step five of the disability determination that "there are jobs that exist in significant numbers in the national economy that [Bunn] can perform." (Id. at 26.) In reaching this conclusion, the ALJ considered Bunn's age, education, work experience, and residual functional capacity, in conjunction with the SSA regulations' Medical-Vocational Guidelines. (Id.) The ALJ further found that Bunn's

"additional limitations have little or no effect on the occupational base of unskilled light work."
(Id.) Accordingly, the ALJ concluded that Bunn was not disabled within the meaning of the
Social Security Act. (Id. at 27.)

Bunn argues that the ALJ erred by: (1) failing to properly evaluate the medical evidence,
specifically (a) the opinion of Bunn's treating physician, and (b) Bunn's residual functional
capacity; (2) relying solely upon the Medical-Vocational Guidelines in determining Bunn's
disability status; and (3) failing to properly evaluate Bunn's credibility. (Pl. Mem. at 8-18.)

### A.    Evaluation of the Medical Evidence

Bunn argues that the ALJ committed two errors in evaluating the medical evidence. (Id.
at 10-16.) First, Bunn contends that the ALJ failed to properly evaluate the opinion of his
treating physician. (Id. at 10-14.) Second, Bunn asserts that the ALJ failed to properly evaluate
his residual functional capacity. (Id. at 14-16.) Bunn is correct as to both of these claims.

### 1.    Evaluation of Bunn's Treating Physician

Bunn contends that the ALJ failed to properly evaluate the opinion of Christopher
Leggett, Ph.D., Bunn's treating physician during the relevant period, under the SSA regulations'
"treating physician rule." (Id. at 10-14.) He is correct.

In order to determine whether the ALJ properly evaluated Dr. Leggett's opinion, the
court must first decide whether that opinion was entitled to controlling weight. See 20 C.F.R.
§ 404.1527(c)(2). If not, the court must decide whether the ALJ provided "good reasons" for
discounting Dr. Leggett's opinion based on the factors set forth at 20 C.F.R. § 404.1527(c)(2).
Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

### a.    *Whether Dr. Leggett's Opinion Was Entitled to Controlling Weight*

Under the SSA's regulations, "a treating physician's report is generally given more
weight than other reports . . . ." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). A "treating

physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician patient relationship with the individual."[1] Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(c)(2). "[A]n ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings . . . ." Carvey v. Astrue, 380 F. Appx. 50, 52 (2d Cir. 2010) (citing Balsamo, 142 F.3d at 80). However, "[w]hen other substantial evidence in the record"—such as other medical opinions—"conflicts with the treating physician's opinion, [ ] that opinion will not be deemed controlling." Snell, 177 F.3d at 133.

The ALJ declined to attribute controlling weight to Dr. Leggett's opinion. (See Rec. at 25.) The ruling did not explicitly state that his opinion was inconsistent with the medical opinions of other medical experts.[2] Nevertheless, Dr. Leggett's opinion was not entitled to controlling weight because it was in fact inconsistent with other substantial evidence in the record, specifically the opinion of consultative examining psychologist Dr. Wade. See 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133.

Drs. Leggett and Wade both evaluated Bunn's mental impairments, and their findings differed significantly. Dr. Wade conducted a single consultative psychological examination of

---

[1]     It is undisputed that Dr. Leggett qualifies as a "treating physician" under this definition. According to the SSA regulations, licensed or certified psychologists are among the acceptable medical sources that can provide evidence to establish an impairment. See 20 C.F.R. § 404.1513(a)(2).
[2]     Although the ALJ wrote that Dr. Leggett's opinion regarding Bunn's inability to work was inconsistent with his own treatment notes, (id. at 25), the presence of such "internal conflicts" within a physician's findings is not a sufficient reason to discount a physician's opinion. Carvey, 380 F. App'x. at 52 (citing Balsamo, 142 F.3d at 80).

Bunn on June 26, 2009.  (See Rec. at 214-17.)  Dr. Leggett, the treating physician in this case, began treating Bunn on July 15, 2009, and continued to treat him every one to three months through September 29, 2010.  (Id. at 284.)  After his first and only examination of Bunn, Dr. Wade concluded that Bunn was "able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions."  (Id. at 216.)  By contrast, following more than a year of treatment, Dr. Leggett concluded that Bunn was "markedly" or "moderately" limited with regard to a number of these abilities.  (See id. at 286-89.)  For example, he found Bunn "markedly limited" in his ability "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance," "to sustain ordinary routine without supervision," and "to work in coordination with or proximity to others without being distracted by them."  (Id. at 287.)  Further, Dr. Leggett found Bunn "moderately limited" in his ability "to understand or remember one or two step instructions" and "to make simple work related decisions."  (Id. at 287-88.)

Dr. Wade noted that Bunn had only "some difficulties relating adequately with others, and appropriately dealing with stress."  (Id. at 216).  Dr. Leggett, on the other hand, found Bunn had a number of limitations relating to social interaction.  (See id. at 288.)  For example, he found Bunn "markedly limited" in his ability "to accept instructions and respond appropriately to criticism from supervisors" and "to get along with co-workers or peers without distracting them or exhibiting behavioral extremes."  (Id.)  He also found Bunn "moderately limited" in his ability "to interact appropriately with the general public," "to ask simple questions or request assistance," and "to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness."  (Id.)

9

Finally, Dr. Wade opined that Bunn's "psychiatric problems" did "not appear to be significant enough to interfere with [Bunn's] ability to function on a daily basis." (Id. at 216.) Dr. Leggett, however, concluded that Bunn was likely to be absent from work "[m]ore than three times a month" as a result of his symptoms. (Id. at 291.) He also found Bunn "moderately limited" in his ability "to be aware of normal hazards and take appropriate precautions," "to travel to unfamiliar places or use public transportation," "to set realistic goals or make plans independently," "to complete a normal workweek without interruptions from psychologically based symptoms," and to "perform at a consistent pace without an unreasonable number and length of rest periods." (Id. at 288-89.)

Accordingly, Dr. Leggett's opinions were not entitled to controlling weight because his views were clearly inconsistent with those of Dr. Wade. See 20 C.F.R. § 404.1527(c)(2). Thus, the question for the court is whether the ALJ provided "good reasons" for the weight given to Dr. Leggett's opinion. Halloran, 362 F.3d at 33.

> b.    *Adequacy of Reasons for Weight Given to Dr. Leggett's Opinion*

When an ALJ determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then assess several factors to determine how much weight to give to the opinion. See 20 C.F.R. § 404.1527(c). Specifically, the ALJ must assess: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran, 362 F.3d at 32. The court will "not hesitate to remand when the

10

Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" or when the court "encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33. The court concludes that the ALJ's reasons for discounting Dr. Leggett's opinions were inadequate.

The ALJ found that Dr. Leggett's opinion was entitled to "only some weight"[3] because (1) Dr. Leggett's "conclusory opinion . . . about the claimant's ability to work [wa]s not supported by his treatment notes"; and (2) Dr. Leggett "determined that the claimant was unable to work for at least 12 months the very first time that he treated [him]." (Rec. at 25.) The ALJ's first statement is not by itself a "good reason" for discounting Dr. Leggett's opinion. See Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) ("[I]t is not enough for the ALJ to simply say that [a treating physician's] findings are inconsistent with the rest of the record. The ALJ [must] provide[] reasons which explain that inconsistency with these other parts."). The ALJ did not specify the inconsistencies he found between Dr. Leggett's opinion and his treatment notes. Moreover, rather than immediately discounting his opinion, the ALJ should have sought clarification from Dr. Leggett regarding any inconsistencies. See Longobardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009) ("[I]f a physician's report is believed to be . . . inconsistent with the physician's other reports, the ALJ must seek clarification and additional information to fill any clear gaps from the physician before dismissing the doctor's opinion."); Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly."). The ALJ failed to meet these requirements.

---

[3]     By contrast, the ALJ gave "fairly considerable weight" to the opinions of consultative examining psychologist Jay Wade, Ph.D. and consultative examining physician Zobidatte Moussa, M.D. (Rec. at 25.)

11

As to Dr. Leggett's determination that Bunn would be unable to work for twelve months, the ALJ does not explain why this provides grounds for giving Dr. Leggett's opinion less weight.[4] Nor does the ALJ seek clarification from Dr. Leggett as to his finding. See Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999) (internal quotation marks omitted) (finding it "entirely possible" that the treating physician "if asked, could have provided a sufficient explanation for any seeming lack of support for his ultimate diagnosis of complete disability"). Dr. Leggett's failure to provide support for his early conclusion regarding Bunn's disability does not necessarily mean that the finding is unsupported. See Clark, 143 F.3d at 118 (noting that the treating physician "might not have provided this [supporting] information in the report because he did not know that the ALJ would consider it critical to the disposition of the case").

In short, in evaluating Dr. Leggett's opinion, the ALJ does not appear to have applied any of the factors provided by 20 C.F.R. § 404.1527(c)(2)-(6) for determining the weight to give a non-controlling opinion of a treating physician. See Schaal, 134 F.3d at 504 (finding the ALJ's decision to be "tainted by legal error" where "the ALJ failed to consider all of the factors cited in the regulations"); Rivas v. Barnhart, No. 01 Civ. 3672 (RWS), 2005 WL 183139, at *22 (S.D.N.Y. Jan. 27, 2005) ("Where an ALJ fails to consider all of the relevant factors in deciding what weight to assign the opinion of a treating physician, the ALJ's decision is flawed."). Specifically, the ALJ's decision makes no reference to the fact that Dr. Leggett is a specialist who had the opportunity to examine Bunn every one to three months over the course of fourteen months. (See Rec. at 284.) Nor does the ALJ otherwise explain why he found the opinion of Dr. Wade—who examined Bunn only one time, shortly after his release from prison—more

---

[4]     If the implication is that a single treatment session is insufficient for evaluation, it is notable that the ALJ gave more weight to the consultative examining physicians, who respectively made findings after only one examination. For reasons left unarticulated, the ALJ chose to draw a negative inference from Dr. Leggett's finding of disability at his first treatment session with Bunn. But this rapid diagnosis could easily suggest that Bunn's condition was so severe as to prompt an immediate and unavoidable finding of complete disability.

12

convincing than the opinion of Dr. Leggett. Cf. Pogozelski, 2004 WL 1146059, at *13 (ALJ erred in according "more than limited weight" to opinion of physician who had examined the claimant on only one occasion); Crespo v. Apfel, No. 97-CV-4777 (MGC), 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (noting that a "consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day").

In sum, the ALJ erred by failing to provide "good reasons" for the lack of weight he gave to Dr. Leggett's opinion, or otherwise assess the factors set forth in the regulations. Halloran, 362 F.3d at 32. Remand is necessary for the ALJ to properly weigh Dr. Leggett's opinion, addressing any concerns regarding inconsistencies between Dr. Leggett's disability determination and his treatment notes.

### 2. Evaluation of Bunn's Residual Functional Capacity

Bunn contends that the ALJ failed to properly evaluate his mental residual functional capacity ("RFC") by not undertaking a "function-by-function analysis" of his abilities. (Pl. Mem. at 14-16.) He is correct. While the ALJ's failure to properly follow the treating physician rule merits remand independently, deficiencies in the ALJ's RFC determination are discussed below so that they, too, may be remedied on remand.

According to Social Security Ruling ("SSR") 96-8p, the RFC assessment is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). The assessment takes into account "physical and mental limitations that affect what [a claimant] can do in a work setting" and reflects "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.91545(a)(1) (emphasis added).

13

a.    *Physical Abilities*

In order to evaluate a claimant's physical abilities, the SSA regulations require an ALJ

assessment of the claimant's ability to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R.

§ 404.1545(b).  "Each function must be considered separately (e.g., 'the individual can walk for

5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine

activities (e.g., 'walk/stand, lift/carry, push/pull')."  SSR 96-8p, 1996 WL 374184, at *5 (July 2,

1996).

Regarding Bunn's physical abilities, the ALJ found that Bunn had "the residual

functional capacity to perform light work"[5] (Rec. at 23.)  This finding by the ALJ, however, is

unsubstantiated by the evidence in the record.  As the ALJ notes, a September 9, 2009 "physical

examination was essentially normal" and "[a]fter a detailed examination, Dr. Moussa found that

the claimant should avoid exposure to respiratory irritants.  Dr. Moussa did not find any other

physical limitations."  (Id. at 24, 26.)  In fact, there is a distinct lack of evidence in the record

relating to Bunn's physical abilities.  There is no record of consultative examining physician Dr.

Moussa undertaking a function-by-function assessment of Bunn's physical abilities, nor does any

other medical record reference any physical limitations Bunn may have.  Nor did the ALJ's

opinion undertake the required function-by-function assessment of Bunn's physical abilities.

---

[5]    The SSA regulations define "light work" as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this
category when it requires a good deal of walking or standing, or when it involves sitting most of
the time with some pushing and pulling of arm or leg controls. To be considered capable of
performing a full or wide range of light work, you must have the ability to do substantially all of
these activities. If someone can do light work, we determine that he or she can also do sedentary
work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
long periods of time.

20 C.F.R. § 416.967(b).

Accordingly, the ALJ's conclusory opinion regarding Bunn's physical RFC is insufficient because it does not allow for review by the court. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (stating that "any determination must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence").

### b.   Mental Abilities

When evaluating a claimant's mental abilities, the ALJ assesses any "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting" that might reduce the claimant's ability to work.  20 C.F.R. § 404.1545(c).

Here, the ALJ determined that, as a result of Bunn's mental impairments, he would be limited to "unskilled work."[6] (Rec. at 23.)  According to SSR 85-15, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember single instructions; to respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985).  Drs. Leggett and Wade both assessed Bunn's mental abilities and, as discussed above (see Part III.A.1, supra), came to substantially different conclusions.  The ALJ relied on the findings of Dr. Wade in reaching the conclusion that Bunn was able to do unskilled work.  (See Rec. at 25-26.)

Because the ALJ's determination on this issue likely is tainted by the failure to properly evaluate Dr. Leggett's opinion under the treating physician rule, Bunn's capacity to undertake unskilled work also must be reconsidered on remand.

---

[6]        The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

15

In evaluating both Bunn's physical and mental RFCs, the ALJ failed to meet the requirements to "include a narrative discussion describing how the evidence supports each conclusion," to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis," and to "describe the maximum amount of each work-related activity the individual could perform." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  On remand, the ALJ is instructed to reassess Bunn's physical and mental residual functional capacity on a function-by-function basis, incorporating the reevaluation of Dr. Leggett's opinion, and to document the findings sufficiently to allow for review.

**B.    Reliance on Medical-Vocational Guidelines**

Bunn contends that the ALJ erred in relying solely on the Medical-Vocational Guidelines to determine his disability status because his impairments are primarily nonexertional.  (Pl. Mem. at 8-10.)  Bunn is correct.

At step five of the disability determination, the burden shifts to the Commissioner to show that the claimant "still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).  Generally, the Medical-Vocational Guidelines are used at this stage, in conjunction with the claimant's RFC, age, education and prior work experience, to determine what type of work existing in the national economy the claimant is capable of performing.  See 20 C.F.R., Pt. 404, Subpt. P, App. 2.  However, the applicability of the guidelines and the need for expert testimony is determined on a "case-by-case basis." Bapp, 802 F.2d at 605.  "Generally speaking, if a claimant suffers only from exertional impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids. For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as

16

to whether he is disabled." Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996). Moreover, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Bapp, 802 F.2d at 603. The application of the grids is not appropriate, however, when "the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment . . . ." Id. at 605-06 (emphasis added). A claimant's work capacity is "significantly diminished" where there is "an additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Id. at 606. In such cases, the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which [the] claimant can obtain and perform." Id. at 603.

Here, the ALJ found that Bunn suffered from "the following severe impairments: affective disorders, anxiety, asthma, headaches, and hyperlipidemia." (Rec. at 22.) Most or all of these impairments are nonexertional in that they "affect [one's] ability to meet the demands of jobs other than the strength demands . . . ." 20 C.F.R. § 404.1569(a); see also SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) (defining nonexertional limitations as "all physical limitations and restrictions that are not reflected in the seven strength demands [i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling], and mental limitations and restrictions"). Despite the prevalence of Bunn's nonexertional impairments—found to be "severe" by the ALJ at step two of the analysis (Rec. at 22)—the ALJ's decision cited no vocational evidence supporting the existence of jobs in the national economy that he could perform. Nor did the ALJ's decision address whether the testimony of a vocational expert was necessary. Instead, the ALJ simply stated that Bunn was "limited to unskilled work due to his mental impairments," that he "should avoid excessive smoke, dust, and other known respiratory irritants," and that his

17

"additional limitations ha[d] little or no effect on the occupational base of unskilled light work."

(Rec. at 23, 26.)  The ALJ "did not specifically articulate the nonexertional impairments that

[Bunn] suffered." Pratts, 94 F.3d at 39.  Indeed, it is unclear which "mental impairments" and

"additional limitations" the ALJ considered, if any, in reaching these conclusions.  The ALJ's

vague and conclusory opinions make it difficult to undertake review here.

      While "the absence of an express rationale does not prevent [the court] from upholding

the ALJ's determination," Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982), in this case it is

likely that the ALJ's RFC determination also is tainted also by the decision not to grant

controlling weight to the opinion of Dr. Leggett.  The performance of unskilled work requires

"the abilities (on a sustained basis) to understand, carry out, and remember single instructions; to

respond appropriately to supervision, coworkers and usual work situations; and to deal with

changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at *4 (1985) (emphasis added).

Dr. Leggett found that Bunn had a number of limitations in these areas.[7]  "A substantial loss of

ability to meet any of these basic work-related activities would severely limit the potential

occupational base." Id.  Consequently, Bunn's ability to undertake unskilled work should be

reassessed on remand, incorporating the reevaluation of Dr. Leggett's opinions, to determine

whether the Commissioner has shown that Bunn's ability to perform the full range of light,

unskilled work is not significantly diminished as a result of his nonexertional impairments.  See

Pratts, 94 F.3d at 39.

---

[7]     For example, among other things, Dr. Leggett found Bunn "markedly" limited in his ability to "work in coordination with or proximity to others without being distracted by them," "accept instructions and respond appropriately to criticism from supervisors," and "get along with co-workers or peers without distracting them or exhibiting behavioral extremes"; "moderately" limited in his ability to "understand or remember one or two step instructions" and "respond appropriately to changes in the work setting"; and "mildly" limited in his ability to "carry out simple one or two-step instructions."  (Rec. at 287-88.)

## C.      Evaluation of Bunn's Credibility

Bunn argues that the ALJ failed to properly evaluate his subjective accounts regarding

the intensity, persistence, and limiting effect of his symptoms. (Pl. Mem. at 16-18.) He is

correct.

The ALJ follows a two-step process to evaluate the credibility of a claimant's subjective

complaints. See 20 C.F.R. § 416.929(c)(3). First, the ALJ "must consider whether there is an

underlying medically determinable physical or mental impairment . . . that could reasonably be

expected to produce the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at

*2 (July 2, 1996). Second, the ALJ "must evaluate the intensity, persistence, and limiting effects

of the individual's symptoms to determine the extent to which the symptoms limit the

individual's ability to do basic work activities." Id. The SSA regulations provide that "all of the

available evidence" will be considered in evaluating the intensity and persistence of a claimant's

symptoms. 20 C.F.R. § 416.929(c)(1). In order to evaluate the claimant's credibility, the ALJ

must consider the following factors:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and
> intensity of the pain; (3) precipitating and aggravating factors; (4) the type,
> dosage, effectiveness, and side effects of any medications taken to alleviate the
> pain; (5) any treatment, other than medication, that the claimant has received; (6)
> any other measures that the claimant employs to relieve the pain; and (7) other
> factors concerning the claimant's functional limitations and restrictions as a result
> of the pain.

Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R.

§ 404.1529(c)(3)(i)-(vii))

Furthermore, the ALJ's "decision must contain specific reasons for the finding on

credibility . . . and must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the

reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996); see also Williams

ex rel. Williams v. Bowen, 859 F.2d 255, 261 (2d Cir. 1988) (stating that an ALJ's determination

that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible

plenary review of the record"). A "single, conclusory statement" by the ALJ is insufficient.

SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

      Here, at the first phase of the credibility determination, the ALJ found that Bunn's

"medically determinable impairments could reasonably be expected to cause some of the alleged

symptoms . . . ." (Rec. at 24.) At the second phase, however, the ALJ discounted Bunn's

statements on the grounds that they were "inconsistent with the [] residual functional capacity

assessment." (Id.) This conclusory statement by the ALJ is insufficient for multiple reasons.

First, it suggests that the ALJ considered only his own RFC assessment in weighing Bunn's

credibility, rather than "all of the available evidence" as required by the SSA regulations.

20 C.F.R. § 416.929(c)(1). Second, the ALJ's conclusion does not comport with the language of

the SSA regulations, which makes clear that the claimant's statements regarding his symptoms—

and any credibility determination stemming from those statements—form part of, and therefore

must precede, the RFC assessment. See 20 C.F.R. § 404.1545(3) (providing that "to assess your

residual functional capacity . . . . [w]e will also consider descriptions and observations of your

limitation from you impairment(s), including limitations that result from your symptoms, such as

pain, provided by you . . . ."); see also Fortier v. Astrue, No. 09 Civ. 993 (RJS) (HBP), 2010 WL

1506549, at *19 n.18 (S.D.N.Y. Apr. 13, 2010) ("This conclusion is somewhat problematic,

because plaintiff's statements are one of the factors the ALJ is to consider in *making* the RFC

assessment."). Finally, other than listing Bunn's daily activities, the ALJ failed to address the

factors required by the regulations.  See 20 C.F.R. § 404.1529(c)(3)(i)-(vii).  In fact, the ALJ failed to specify any inconsistency between Bunn's testimony and the record.

Even assuming the ALJ considered all the relevant evidence and simply failed to document that analysis, the credibility finding remains insufficient.  A credibility finding based on all the record evidence likely would be tainted here by the ALJ's failure to properly evaluate the opinions of Bunn's treating physician and Bunn's residual functional capacity (see Part III.A, supra).  On remand, the ALJ is directed to carry out a more detailed analysis of Bunn's subjective complaints so that a reviewing court may determine whether the ALJ's conclusion is based on substantial evidence.  The reevaluation of Bunn's credibility should be based on all of the record evidence and should incorporate the ALJ's reevaluation of Dr. Leggett's opinions and consequent residual functional capacity assessment.  If the ALJ believes there are inconsistencies, and relies upon them in the analysis, those inconsistencies and analyses should be specified.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's cross-motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the Commissioner for a proper evaluation of the opinions of Dr. Leggett, a proper evaluation of Bunn's residual functional capacity, and a reevaluation of Bunn's subjective complaints in light of all the medical evidence.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      August _6_, 2013

NICHOLAS G. GARAUFIS
United States District Judge